# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**MILDRED ALLEN**                                                                                    **PLAINTIFF**

**V.**                           **NO. 4:20CV01251 BSM-PSH**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER of the**
**SOCIAL SECURITY ADMINISTRATION**[1]                           **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Brian S. Miller. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.  Introduction:**

On February 8, 2018, Mildred Allen filed a Title II application for disability and disability insurance benefits. (Tr. at 11-22). In the application, Ms. Allen alleged

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

disability beginning on January 6, 2017. *Id*. On February 3, 2020, an administrative law judge (ALJ) issued a partially favorable decision, finding that Ms. Allen became disabled on May 25, 2019, but was not disabled before that day.[2] *Id*. The Appeals Council denied Ms. Allen's request for review on August 18, 2020. (Tr. at 1-3). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Allen has requested judicial review.

For the reasons stated below, the Court should affirm the Commissioner's decision.

## II. The Commissioner's Decision:

The ALJ found that Ms. Allen, who was in the Advanced Age disability category throughout the relevant time-period (Tr. at 20),[3] had not engaged in substantial gainful activity since the alleged onset date of January 6, 2017.[4] (Tr. at 13). The ALJ next found that Ms. Allen had the following severe impairments: arthritis, fibromyalgia, history of right rotator cuff repair, history of right carpal and

---

[2] Ms. Allen suffered a serious back injury on May 25, 2019. (Tr. at 19).

[3] The relevant time-period was January 6, 2017, through May 25, 2019. (Tr. at 11-22).

[4] The ALJ followed the required five-step analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment (Listing); (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

cubital tunnel release, neuropathy, anxiety disorder, and affective disorder. *Id*.

After finding that Ms. Allen's impairments did not meet or equal a Listing (Tr. at 14),[5] the ALJ determined that, prior to May 25, 2019, Ms. Allen had the residual functional capacity (RFC) to perform work at the medium exertional level, with additional limitations: (1) she could no more than occasionally climb ramps and stairs, and no more than occasionally stoop, kneel, crouch, and crawl; (2) she could no more than occasionally reach overhead with the right upper extremity; (3) she could no more than occasionally be exposed to extreme cold and vibrations; (4) she could frequently handle, but could never climb ladders, ropes, or scaffolds; (5) she could understand and remember simple instructions and could sustain attention and concentration to complete simple tasks with regular breaks every two hours; (6) she could interact as needed with supervisors and coworkers and occasionally interact with the public; and (7) she could adapt to routine work conditions and occasional work place changes. (Tr. at 15).

The ALJ next found that Ms. Allen was unable to perform any of her past relevant work. (Tr. at 19). At Step Five, the ALJ relied on the testimony of a Vocational Expert (VE) to find that, considering Ms. Allen's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy

---

[5] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

that she could perform prior to May 25, 2019. (Tr. at 21-22). Therefore, the ALJ found that Ms. Allen was not disabled from January 6, 2017, through May 25, 2019, at which point she became disabled. *Id*.

### III. Discussion:

    A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary

sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

    B.   Ms. Allen's Arguments on Appeal

Ms. Allen argues that the evidence supporting the ALJ's decision to deny benefits is less than substantial. Specifically, she contends that the ALJ did not acknowledge or resolve a possible conflict between the VE's testimony and the *Dictionary of Occupational Titles* (DOT). She also asserts that she would not be able to perform medium exertional work.

Ms. Allen alleged generalized pain, stemming from fibromyalgia, but doctors treated the condition conservatively with medication. (Tr. at 363, 366). She had remote knee and shoulder injuries, but there was little recent evidence suggesting that these injuries were disabling. (Tr. at 605-616). Ms. Allen was diagnosed with arthritis in her hands and bilateral cubital tunnel syndrome and bilateral carpal tunnel syndrome, and she had right-handed release surgeries in September 2018. (Tr. at 526-537). She progressed smoothly after surgery.[6] (Tr. at 997-999). Additionally,

---

[6] Improvement in condition supports an ALJ's finding that a claimant is not disabled. See

Ms. Allen alleged that a left foot stress fracture was disabling. She did require a scooter for some time because of this injury (Tr. at 540-541), but she admitted that the stress fracture had healed before the end of the relevant time-period. (Tr. at 381-390, 538-541); Doc. No. 16 at 10. To help with Ms. Allen's alleged aches and pains, her doctor recommended home therapy exercises.[7] (Tr. at 334-347).

Ms. Allen treated her mental health disorders conservatively, and she did not require inpatient hospitalization. (Tr. at 449-472, 492). Her anxiety and depression worsened due to situational stressors, including her son's erratic behavior.[8] (Tr. at 441, 922-937). Clinic notes from her therapist evidenced a resistance to learning coping mechanisms. (Tr. at 906-907). But Ms. Allen said she could do things like prepare meals, shop in stores, do laundry, drive, and attend to personal care.[9] (Tr. at 236-237, 268-269).

Ms. Allen claims that the RFC limitation to simple tasks with simple instructions would not allow her to perform work with a reasoning level of 2. The

---

*Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

[7] A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. See *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

[8] Situational stressors do not suggest an entitlement to disability benefits. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001).

[9] Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

jobs identified by the VE are reasoning level 2 jobs, according to the DOT (Level 2 reasoning requires an ability "to understand and carry out detailed but uninvolved written or oral instructions and to deal with problems involving a few concrete variables in or from standardized situations"). *Thomas v. Berryhill*, 881 F.3d 672, 677 (8th Cir. 2018); (Tr. at 57); Doc. No. 16 at 7.

The Eighth Circuit has repeatedly recognized that DOT definitions are "simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). Nevertheless, before relying on VE evidence to support a determination that a claimant is not disabled, the ALJ has an affirmative responsibility to ask about "any possible conflict" between VE testimony and the DOT, and to obtain an explanation for any such conflict. *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007); see Social Security Ruling 00-4p, 2000 WL 1898704 (Dec. 4, 2000). In *Moore*, the Eighth Circuit held that a restriction to simple instructions and simple work does not conflict with reasoning level 2 jobs. *Moore*, 623 F.3d at 604. See also *Smithee v. SSA*, NO. 3:17-CV-175-BD, 2018 WL 3132603 at *11 (E.D. Ark. June 26, 2018) (in accord with *Moore*, uninvolved reasoning level 2 jobs do not conflict with an RFC for simple work). Because there was no conflict here, the ALJ in this

7

case properly relied upon VE testimony at Step Five.[10]

Ms. Allen next argues that her physical limitations would not allow her to perform medium level work, and if she had been limited to light or sedentary work, the Grid Rules would automatically render her disabled, because of her advanced age.[11]

First, the two Disability Determination services medical experts found Ms. Allen capable of medium work, with postural limitations. (Tr. at 19). The record of conservative (and effective) treatment supports these RFC assessments, and the ALJ found the opinions to be persuasive. *Id*. Also, Ms. Allen's reported daily activities suggest that she would be able to perform medium level jobs. The RFC did not outstrip Ms. Allen's abilities.

## VI. Conclusion:

There is substantial evidence to support the Commissioner's decision that Ms. Allen was not disabled. There was no conflict at Step Five and the RFC fully

---

[10] Additionally, the ALJ actually did ask the VE if her testimony was consistent with the information contained in the DOT. (Tr. at 57-58).

[11] Grid Rules are "fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment." *Gray v. Apfel*, 192 F.3d 799, 802 (8th Cir. 1999). The Grid Rules direct a finding of "disabled" or "not disabled" when a claimant can perform all or substantially all of the exertional demands at a given level of exertion, with no non-exertional impairments. *Id*.; 20 C.F.R. § 404, Subpart P, Appx. 2.

incorporated Ms. Allen's credible limitations. The case should be dismissed, with prejudice.

    IT IS SO ORDERED this 24th day of May, 2022.

                                        _____
                                        UNITED STATES MAGISTRATE JUDGE